IN THE SUPREME COURT OF MISSISSIPPI
NO. 1998-KM-01780-SCT

*BONNETTE BEARD BOATNER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/15/1998 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE S. SHADDOCK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DONNA J. HODGES |
| DISTRICT ATTORNEY: | JAYE A. BRADLEY |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 01/13/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/3/2000 |

## BEFORE PRATHER, C.J., SMITH AND COBB, JJ.

## COBB, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This is a criminal appeal from the Greene County Circuit Court. Bonnette Beard Boatner was charged with one count of misdemeanor abuse of a vulnerable adult under Miss. Code Ann. § 43-47-19 (1), (2) (Supp. 1996) (Mississippi Vulnerable Adults Act), by affidavit of Johnny Watkins, Mississippi Attorney General Investigator filed with the Greene County Justice Court. On January 6, 1998, Boatner was tried in the Justice Court and convicted, and she timely filed her notice of appeal with the Greene County Circuit Court on January 15, 1998. After a *de novo* bench trial on November 12, 1998, Boatner was found guilty and sentenced to one year in the county jail, with six months suspended, a $1000 fine, one year good behavior, non-reporting probation, and ordered to pay court costs. Aggrieved by the judgment of the circuit court, Boatner filed a timely notice of appeal to this Court on Nov. 12, 1998.

### STATEMENT OF THE FACTS

¶2. The affidavit in this case alleged that Boatner, a certified nursing assistant in the employment of Brookwood Manor Nursing Center[1] in Leakesville, Mississippi on July 21,1997, committed misdemeanor abuse of Hattie Bodie, an eighty-five year old patient, by cursing and slapping Mrs. Bodie on the buttocks. Teresa Crabtree, a witness for the State, was the administrator of Brookwood at the time of the incident.

Crabtree testified that Boatner gave a written statement regarding the incident. The statement disclaimed any slapping or cursing.

¶3. Katrina Heathcock, a nursing assistant trainee and a witness for the State, was working with Boatner when the incident occurred. Heathcock testified that on the evening of July 21, 1997, while she and Boatner were removing the wheel chair lap restraint from Mrs. Bodie to prepare her for bed, Boatner "yanked the other side of it and she was cursing her out." Heathcock further testified that after they had moved Mrs. Bodie to the bed and as they were changing her diaper, Boatner then struck Mrs. Bodie on the buttocks with her open hand. Heathcock testified that after Boatner struck Mrs. Bodie, Boatner commented "Well, I hit her too hard, didn't I?" Heathcock also testified that Mrs. Bodie "yelled out" when Boatner struck her.

¶4. Another witness for the State, Amy McLeod Brown, a registered nurse, testified that she was working at Brookwood on the night in question and that Heathcock reported the incident to her. Brown and Joy Turner, a licensed practical nurse, went to Mrs. Bodie's room and examined Mrs. Bodie outside the presence of Heathcock, at which time they observed, and Turner photographed, what they determined to be a hand print. [2] Turner testified that when Boatner was suspended from employment, Boatner asked "Abused who?" then Boatner laughed and replied "I love these old people."

¶5. Boatner testified they were not working "shorthanded" on July 21, 1997, and denied slapping Mrs. Bodie, but stated that Mrs. Bodie resisted her as Boatner was cleaning and drying her. Boatner further testified that she had learned in her training that she was not to spank or hit a patient, that to do so would be abuse, and that she was instructed to walk away from resistant patients rather than "lose your cool". She also testified she knew no reason Heathcock would lie.

¶6. The four issues Boatner presents on appeal to this Court are as follows:

> **I. THE STATUTE IN THIS CASE, SECTION 43-47-19, MISS. CODE 1972, AMEND., IS UNCONSTITUTIONAL ON THE GROUNDS OF VAGUENESS AND AMBIGUITY, AND AS SUCH, A CONVICTION UNDER SAME IS VOID.**

> **II. THE STATE, IN NOT CALLING THE AFFIANT IN THIS CASE, JOHNNY WATKINS, AS A WITNESS AT TRIAL, EFFECTIVELY DENIED THE APPELLANT OF HER SIXTH AMENDMENT RIGHTS OF CONFRONTATION OF HER ACCUSERS, REQUIRING REVERSAL.**

> **III. THE JUDGMENT OF THE GREENE COUNTY JUSTICE COURT IS VOID IN THAT IT EXCEEDED THE AUTHORITY OF JUSTICE COURT JURISDICTION, AND IS TOTALLY VAGUE AS TO THE SENTENCE RENDERED, PARTICULARLY AS TO ENHANCED INCARCERATION NOT ALLOWED BY THE CONTROLLING STATUTE.**

> **IV. THE JUDGMENT IN THIS CASE IS CONTRARY TO THE WEIGHT OF CREDIBLE EVIDENCE ADDUCED AT TRIAL, CONTRARY TO THE REQUIREMENT OF PROOF BEYOND A REASONABLE DOUBT, AND CONTRARY TO THE LAW OF THIS STATE.**

## ANALYSIS

## I. THE STATUTE IN THIS CASE, SECTION 43-47-19, MISS. CODE 1972, AMEND., IS UNCONSTITUTIONAL ON THE GROUNDS OF VAGUENESS AND AMBIGUITY, AND AS SUCH, A CONVICTION UNDER SAME IS VOID.

¶7. The statute in question reads as follows:

Miss. Code Ann. § 43-47-19. **Abuse, neglect and exploitation forbidden**

(1) It shall be unlawful for any person to abuse, neglect or exploit any vulnerable adult.

(2) Any person who willfully commits an act or omits the performance of any duty, which act or omission contributes to, tends to contribute to or results in the abuse, neglect or exploitation of any vulnerable adult shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine not to exceed One Thousand Dollars ($1,000) or by imprisonment not to exceed one (1) year in the county jail, or by both such fine and imprisonment.

(3) Any person who wilfully inflicts physical pain or injury upon a vulnerable adult shall be guilty of felonious abuse and/or battery of a vulnerable adult and, upon conviction thereof, may be punished by imprisonment in the State Penitentiary for not more than twenty (20) years.

Explanations of the statutory terms appear in the definition section of the statute, as follows:

Miss. Code Ann. § 43-47-5 **Definitions**

For the purposes of this chapter, the following words shall have the meanings ascribed herein unless the context otherwise requires:

(a) "Abuse" shall mean the willful infliction of physical pain, injury or mental anguish on a vulnerable adult, the unreasonable confinement of a vulnerable adult, or the willful deprivation by a caretaker of services which are necessary to maintain the mental and physical health of a vulnerable adult. "Abuse" shall not mean conduct which is part of the treatment and care of, and in furtherance of the health and safety of a patient or resident of a care facility.

. . .

(i) "Exploitation" shall mean. . . the illegal or improper use of a vulnerable adult or his resources for another's profit or advantage.

. . .

(k) "Neglect" shall mean. . . the failure of a caretaker to supply the vulnerable adult with food, clothing, shelter, health care, supervision or other services which are necessary to maintain his mental and physical health.

¶8. Boatner argues that the statute gives no guidance as to the meaning of "abuse", "neglect" or "exploitation" and that, therefore, the "criminal act is left up to a jury, or in this case, a judge to define." Clearly, subsections (a),(i), and (k) of section 43-47-5, as outlined, supra, not only offer guidance, but lay out plain definitions of the terms "abuse", "neglect" and "exploitation", so that the judge in this case had no need to, nor did he, provide his own definitions.

¶9. Boatner offers the cases of ***Giaccio v. Pennsylvania,*** *382 U.S. 399, 86 S. Ct. 518, 15 L.Ed. 2d 447 (1966)* and ***Cramp v. Board of Public Instruction,*** *368 U.S. 278, 82 S. Ct. 275, L.Ed. 2d 285 (1961)* as standing for the proposition that an unconstitutionally vague statute which carries the risk of prosecution constitutes a denial of due process of law.

¶10. In *Giaccio*, the defendant was acquitted and sentenced to pay the costs of prosecution. 86 S. Ct. 518. The 1860 Act simply stated that the jurors "shall determine, by their verdict, whether. . . the defendant shall pay the costs" and that the judge shall "pass sentence to that effect, and order [defendant] to be committed to the jail [until he pays]." *Id.* at 521. The court, in holding the Act constitutionally invalid, noted that the statute did not impose any condition, limitation or contingency on the jury. *Id.*

¶11. The statutory language in *Giaccio* stands in stark contrast to the clear language of Miss. Code Ann. § 43-47-19 and its subsections which list  the specific offensive acts proscribed, (1) "abuse, neglect or exploit any vulnerable adult", (2) "willfully commits an act or omits the performance of a duty, which . . contributes to, tends to contribute to or results in the abuse, neglect or exploitation of any vulnerable adult. . . ." Miss. Code Ann. §  43-47-19.

¶12. In *Giaccio*, the Court stated that, ". . . a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Id.* at 520,521. The *Giaccio* Court also stated that "[i]mplicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce. This state Act does not even begin to meet this constitutional requirement." *Id.* at 521. In further contrast to the sparse language addressed by the *Giaccio* Court, the language of Miss. Code Ann. § 43-47-5 provides definitions with understandable meaning for the punishable acts of "abuse", "exploitation" and "neglect". Miss. Code Ann. § 43-47-5 (a),(i),(k). These statutory directives and definitions were intended to, and successfully provide clear legal standards that the courts can and must enforce as the Circuit Court did in this case.

¶13. In *Cramp*, the statutory language in question involved an oath which required all employees of the State of Florida to swear that they, inter alia, had not and would not "lend [their] aid, support, advise, counsel or influence to the Communist Party." *Cramp* , at 280 & 285. The issue to be decided was not only whether a state can constitutionally compel those in its service to swear to such terms, but what the terms meant. *Id.* at 286. The Court, focusing on the "extraordinary ambiguity of the statutory language", discussed whether one who had ever cast a vote for a Communist candidate legally appearing on a ballot could safely subscribe to the oath, or whether one who had voted for a candidate nominated by another party, but endorsed by the Communist Party, could so subscribe. *Id.* The Court further questioned whether a lawyer who had represented the Communist Party or its members swear that he had never knowingly lent his "counsel" to the Party.

¶14. The Court in *Cramp*, in holding an oath to be unconstitutionally vague, stated:

> We think this case demonstrably falls within the compass of those decisions of the Court which hold that " . . a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process law."

*Id.*, at 287 (citation omitted). The Court also commented, "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statute. All are entitled to be informed as to what the State commands or forbids." *Id.*, citation omitted. In light of the plain language of Miss. Code Ann. §§ 43-47-19 ; 43-47-5 (a), (i), (k), it is clear what the State forbids. Where the statute proscribes "willful infliction of physical pain, injury or mental anguish on a vulnerable adult" and "commit[ting] an act. . . which contributes to, tends to contribute to or results in [willful infliction of physical pain, injury or mental anguish (upon) a vulnerable adult]" (§ 43-47-19 and § 43-47-5(a)), the statute is clearly informative. This Court has held that the test concerning statutory construction is whether a person of ordinary intelligence would, by reading the statute, receive fair notice of that which is required or forbidden. *State v. Burnham*, 546 So.2d 690, 692 (Miss. 1989). The language of the statute in question informs an adult of ordinary intelligence that striking an adult patient in a care facility with an open hand is punishable as abuse. As the State emphasizes, in its brief, "[a]lthough a statute imposing criminal penalties must be strictly construed in favor of the accused, it should not be so strict as to override common sense or statutory purpose." *United States v. Brown*, 333 U.S. 18, 25, 68 S.C. 376, 380, 92 L.ED 442, 448 (1948).

¶15. An unstrained reading of the statute would also put any person of ordinary intelligence on notice that a striking which left a red mark in the shape of a partial hand print long enough for a nurse to obtain a photograph of it, is abuse. At the very least, such a striking would be something which clearly "tended to contribute. . . to the abuse. . . of any vulnerable adult." *Id.* Likewise, a plain reading of the statute would put one on notice that a striking which caused an elderly patient to respond by "yell[ing] out" is abuse, or at the very least would be an act that tends to contribute to or result in abuse. *Id.*

¶16. Whereas the Court in *Cramp* stated, ". . . it appears upon a mere inspection that these general words and phrases are so vague and indefinite that any penalty prescribed for their violation constitutes a denial of due process of law", the court in the present case was not left with general words and phrases to decipher. *Id.* Because the vague statutory language found in *Giaccio* and *Cramp* is so distinguishable from the informative language of Miss. Code Ann. §  43-47-19 and § 43-47-5(a),(i), (k), neither case is controlling. Here, the Mississippi statute in question does not constitute a denial of due process.

¶17. In *Meeks v. Tallahatchie County*, 513 So. 2d 563 (Miss. 1987), this Court applied the test for determining whether a statute is unconstitutionally vague as set out in *Connally v. General Construction Co.*, 269 U.S. 385, 46 S. Ct. 126, 70 L.Ed. 322 (1926). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process." *Meeks*, at 566 (quoting *Connally*, at 391). Boatner herself admitted under oath that "you are never supposed to hit a resident" and that to do so is abuse. The State rightfully asks how Boatner can, then, claim the statute was vague. Boatner was on notice as to what behavior was prohibited. *Id*. For the foregoing reasons, Boatner's argument that the statute is unconstitutionally vague and ambiguous fails.

### II. THE STATE, IN NOT CALLING THE AFFIANT IN THIS CASE, JOHNNY WATKINS, AS A WITNESS AT TRIAL, EFFECTIVELY DENIED THE APPELLANT OF HER SIXTH AMENDMENT RIGHTS OF CONFRONTATION OF HER ACCUSERS, REQUIRING REVERSAL.

¶18. Johnny Watkins, contrary to Boatner's accusation, did not perpetrate some type of "hit and run accusation". Watkins, an Investigator for the Mississippi Attorney General's Office, was just that, an

investigator, not a witness to the events, nor an original accuser. The State did not have to call Johnny Watkins. The State did, however, call all of the employees who witnessed first hand the acts and results of the acts on the night in question, and whose accusations and testimony were used by Watkins in the compilation of the affidavit. The affidavit on which the charge proceeded was never offered as evidence against Boatner. All of the witnesses who offered evidence against her were available for confrontation as the defense cross-examined each of these witnesses. Even if Watkins had testified, he would have testified to the information provided by the witnesses, and not to anything Watkins himself witnessed first-hand. Had the State called Watkins to testify, the outcome of the trial would not have been different.

¶19. Miss. Code Ann. §  99-35-143 (1972, as amended) provides the procedural bar:

> A judgment in a criminal case shall not be reversed because. . . of any errors or omissions in the case in the court below, except where the errors or omissions are jurisdictional in their character, unless the record shows that the errors complained of were made ground of special exception in that court.

*Id.* We have held that "[a] trial judge will not be found in error on a matter not presented to him for decision."*Smith v. State,* 729 So. 2d 1191, 1205 (Miss. 1998). Boatner's complaint that her right to confront the witness was violated because the State did not call Watkins, the investigator with the Attorney General's Office, as a witness at trial is without merit. The State correctly states that such an objection may not be raised for the first time on appeal, citing *Smith*, at 1205. Boatner is raising this issue for the first time on appeal to this Court, and is, therefore, barred. *Bass v. State,* 328 So. 2d 665, 666 (Miss. 1976).

¶20. Boatner contends that Watkins's absence "calls into question the ultimate integrity of the fact finding process" and cites *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) in support of her claim that the State's failure to call Watkins was error. *Roberts* is distinguishable in that the issue in *Roberts* was the constitutional propriety of the introduction in evidence of preliminary hearing testimony not produced at the criminal trial. *Id.* at 59. The State, relying on an Ohio statute that permitted the use of preliminary hearing testimony of a witness who "cannot for any reason be produced at trial", offered the transcript of the missing witness' testimony. *Id.*

¶21. A criminal defendant is guaranteed the right to confront the witnesses against him. *Stromas v. State*, 618 So.2d 116 (Miss. 1993). Although Boatner had every right to compel the presence of witnesses at trial, there is no evidence that she ever subpoenaed Watkins to appear, nor does she suggest that she attempted to call Watkins to testify. Therefore, Boatner's claim of denial of her Sixth Amendment right to confront witnesses against her is without merit.

### III. THE JUDGMENT OF GREENE COUNTY JUSTICE COURT IS VOID IN THAT IT EXCEEDED THE AUTHORITY OF JUSTICE COURT JURISDICTION, AND IS TOTALLY VAGUE AS TO THE SENTENCE REQUIRED, PARTICULARLY AS TO THE ENHANCED INCARCERATION NOT ALLOWED BY THE CONTROLLING STATUTE.

¶22. Boatner raises this issue for the first time in this appeal. The issue is procedurally barred pursuant to the same authorities cited under Issue II. Upon her appeal of conviction in justice court, Boatner was entitled to a trial de novo on appeal to the circuit court. Boatner's appeal to this Court appeals the circuit court's judgment.[3] Notwithstanding the fact that the present appeal is from the judgment of the circuit court and not the justice court, it appears that Boatner complains that the judgment of the justice court exceeds that

court's jurisdiction. After a trial *de novo*, the Circuit Judge sentenced Boatner to serve one year in the county jail, with six months suspended, fined her $1,000, ordered a period of non-reporting, good behavior probation for one year, and a payment of court costs. This sentence is within the statutory sentencing limits provided by Miss. Code Ann. § 43-47-19 (2), supra. It is immaterial that the judgment of the justice court provided that the court retain jurisdiction and that "a review of the sentence be held in six months from the date of conviction to determine if justice in this cause has been served and if further incarceration is needed", because Boatner's appeal to the circuit court placed all issues, including the sentence, in the jurisdiction of the circuit court.

¶23. Assuming there was procedurally any merit to any assignment of error at the justice court level of the proceedings, and notwithstanding the fact that Boatner is appealing the decision of the circuit court judge, there is simply no merit substantively in this assignment of error. The justice court judge did not exceed the maximum fine or imprisonment in his judgment against Boatner. For the foregoing reasons, Boatner's jurisdictional argument must fail.

### IV. THE JUDGMENT IN THIS CASE IS CONTRARY TO THE WEIGHT OF CREDIBLE EVIDENCE ADDUCED AT TRIAL, CONTRARY TO THE REQUIREMENT OF PROOF BEYOND A REASONABLE DOUBT, AND CONTRARY TO THE LAW OF THIS STATE.

¶24. We will not reverse and grant a new trial unless convicted that the verdict is so contrary to the overwhelming weight of evidence that to allow it to stand would sanction an unconscionable injustice. (***Gossett v. State,*** 660 So.2d 1285 (Miss. 1995). This Court has stated the standard to be applied in determining whether evidence was sufficient to support a verdict is, when reviewing such evidence, all evidence supporting or tending to support the verdict, together with all inferences which reasonably may be drawn therefrom, shall be taken as true. (***Aldridge v. State***, 398 So. 2d 1308 (Miss. 1981). The State offers the following authority for the standard of review:

> "For review of the findings of a trial judge sitting without a jury, this Court will reverse 'only where findings of the trial judge are manifestly erroneous or clearly wrong." ***Amerson v. State***, 648 So. 2d 58, 60 (Miss. 1994) citation omitted; "The trial judge has the sole authority to determine the credibility of the witnesses when sitting as trier of fact in a bench trial." ***Rice Researchers, Inc. v. Hiter***, 512 So. 2d 1259, 1265 (Miss. 1987). "Where evidence is contradictory, this Court 'generally must affirm'." ***Lesley v. State***, 606 So. 2d 1084, 1091 (Miss. 1992) (citations omitted).

¶25. Boatner's argument on this issue seems to suggests the following four things:

(1) Her burden is increased because "as this was a bench trial, no Motion for a New Trial was filed." (Appellant cites no authority for this proposition.)

(2) Her burden is further increased because "for reasons unknown to Boatner, such Final Judgment is not a part of the record in this appeal." (Appellant cites no authority for this proposition.)

(3) Contradictions in the evidence call for reversal based on weight of the evidence argument.

(4) The Circuit Judge demonstrated bias toward her and partiality toward the prosecution.

¶26. Regarding the fact that the final judgment does not appear in the record, this Court has repeatedly

stated that the appellant must make sure the record contains all matters necessary for appeal. ***Shelton v. Kindred***, 279 So. 2d 642 (Miss. 1973); ***Burney v. State***, 515 So. 2d 1154 (Miss. 1987); ***Baugh v. State***, 388 So. 2d 1419 (Miss. 1980); ***Yates v. State***, 342 So. 2d 312 (Miss. 1977). Boatner failed to do so. Furthermore, Boatner received a copy of the judgment. [(4)](#)

¶27. Regarding Boatner's suggestion that contradictions in the evidence warrant reversal, the judge as the fact-finder in this case, upon hearing the testimony and observing the demeanor of the witnesses, resolved any issues of fact against Boatner.

¶28. In suggesting that the Circuit Judge demonstrated bias toward her and partiality toward the prosecution, Boatner refers the Court to ***Jones v. State***, 669 So. 2d 1383 (Miss. 1995) and ***West v. State***, 519 So. 2d 418 (Miss. 1988). The only citation from the record to support Boatner's claim of bias or partiality of the trial judge is taken from the Court's pronouncement of guilt, whereas, in ***Jones*** and ***West***, the trial judge actually questioned the witnesses. The ***West*** Court found thirty instances where the trial judge improperly interjected himself into the proceedings, twenty of which the court characterized as coaching the district attorney. ***West***, at 421. No such participation was present in this case. A pronouncement of guilt necessarily favors the prosecution. Boatner's assignment of error in this issue, as in the preceding three issues, is without merit.

### CONCLUSION

¶29. Finding no reversible error, we affirm the judgment of the Greene County Circuit Court.

¶30. **AFFIRMED.**

> **PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**
>
> **McRAE, JUSTICE, DISSENTING:**

¶31. Boatner was tried and convicted in the justice court without a jury and given a sentence of one year in jail with six months suspended, fined $1,000, and given one year of probation. This sentence, of course, exceeded the justice court's authority for two reasons. First of all, Miss. Code Ann. § 21-13-19 (1990) provides that all violations of state penal laws which are misdemeanors are also

> criminal offenses against the municipality in whose corporate limits the offenses may have been committed to the same effect as though such offenses were made offenses against the municipality by separate ordinance in each case. However, for such misdemeanor, any penalty of incarceration is hereby limited to no more than six (6) months in jail, and any fine is hereby limited to a maximum of one thousand dollars ($1,000.00) for each such violation in any case tried without a jury.

¶32. Secondly, a justice court judge, sitting without a jury, may sentence a defendant to serve a term of no longer than six months. See ***Lewis v. United States***, 518 U.S. 322, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996) (holding that offenses carrying maximum sentences of six months or less are "petty offenses" to which the Sixth Amendment right to trial by jury does not apply); ***Blanton v. City of North Las Vegas***, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) (same); ***Harkins v. State***, 735 So.2d 317

(Miss. 1999); Uniform Rules of Circuit and County Court Practice 12.02(c)[(5)]. Boatner was sentenced to one year in jail albeit with six months suspended. Boatner's sentence of one year with a year's probation exceeded the limits of the justice court's authority.

¶33. On appeal, Boatner received a trial *de novo* in circuit court. There she was sentenced to one year in the county jail with six months suspended, a $1,000 fine and one year of probation.

¶34. The majority holds that since Boatner appealed her conviction to circuit court, it matters only that the sentence comports with the authority given the circuit court pursuant to the criminal statute with which Boatner was charged, Miss. Code Ann. § 43-47-19(2) (1993). Further, the majority holds that the justice court did not exceed the maximum imprisonment in sentencing Boatner. The majority is wrong on both counts. As explained above, the justice court had authority to sentence Boatner to a period of imprisonment no greater than six months, not one year with six months suspended and one year probation. It is beyond peradventure that the justice court, in sentencing Boatner, exceeded what it could lawfully do under our statutes.

¶35. That being so, since the State chose to begin its prosecution of Boatner at the justice court level, Boatner's punishment should never be any greater than that which the justice court was authorized to give. Had the State desired a greater sentence than six months, it could easily have taken the case to the circuit court to begin with. Because it did not, the State waived its opportunity to seek a sentence greater than that which the justice court could mete out.

¶36. Finally, the punishment given by the circuit court not only exceeded that which was authorized the justice court, it exceeded that which the circuit court was authorized to give. Miss. Code Ann. § 43-47-19(2) (1993) allows for a maximum sentence of one year imprisonment and a $1,000 fine. The circuit court in this case ordered Boatner to serve one year in jail with six months suspended and one year probation. Even were we to ignore the issue of whether the justice court's jurisdiction limited that of the circuit court on appeal, this sentence exceeded what could be given under § 43-47-19(2) by one year. *Goss v. State*, 721 So.2d 144, 145 (Miss. 1998).

¶37. I dissent from the majority's affirmance of Boatner's sentence. Due process demands that the case be remanded to the Circuit Court of Greene County for imposition of a sentence of incarceration of no greater than six months inclusive of any period in which the sentence is suspended or Boatner is on probation.

1. It should be noted that while the State's brief refers to the facility as Brookmanor Nursing Center, Boatner's brief refers to it as Brookwood Manor Nursing Center, as it is referred to in the administrator's testimony at trial.

2. Three photographs identified at trial by Joy Turner were introduced into evidence.

3. This judgment does not appear in the Clerk's Papers, but is noted in the Official Docket as having been filed December 7, 1998. This Court's file reveals a copy of the Judgment, stamped "Filed December 7, 1998" as attached to the Memo from Greene County Circuit Clerk Scharlotte Fortenberry directed to Supreme Court Clerk Charlotte Williams.

4. Circuit Court General Docket entry: "12-07-98 Judgment of Conviction - filed copy sent to Dawn (sic) Hodges & George Shaddock."

5. Rule 12.02c provides in part that "[i]n appeals from justice or municipal court when the maximum possible sentence is six months or less, the case may be tried without a jury at the court's discretion ...."